LOFTIN, Garnishee, vs. SHACKELFORD.

1. An equitable demand cannot be set off by a garnishee in a court of law against his indebtedness to the defendant.

Error to the County Court of Sumter.

Huntington, for the plaintiff:

The service of garnishment merely creates a lien on the fund attached for the benefit of the creditor, between whom and the garnishee, if the fund be liable, the relation of trustee and *cestui que trust* immediately springs up by operation of law.   In the older States, at least in parts of New England, the garnishee is technically styled trustee after judgment, and the process is known as trustee process.   The question at issue is, whether the party served with process holds any thing which by reason of the inability of the principal debtor to satisfy the debt, ought to be decreed as held in trust for the principal creditor.   In Piquet v. Swann, 4 Mason, 447, Judge Story gives the foreign attachment custom of the city of London as being probably the origin of the trustee and similar process in the different states of the Union ; and states it as quite apparent that the principles of that process have never been supposed to reach cases where there were any trusts set up by the party in favor of third persons.   If therefore he has a right to set up a mere trust in favor of a third person, it would seem that he could avail himself of any equitable reason why he himself should be permitted to re-

tain the money as against an attachment creditor. Accordingly Judge Story in the case refered to limits the operation of such process, among other things, " to acknowledged deposits of money or credits admitted as real balances due from the trustee in money transactions or matters in account between the trustee and the debtor; and that it did not extend to cases where the trustee controverted the right of the debtor to any such goods, effects or credits altogether, *or asserted any adverse interest, title or claim.*" In the same case the process itself is spoken of by the court as an extraordinary one, which from its very nature can afford but a very imperfect administration of rights and remedies to the litigant parties, and the results of which in a general view do not entitle it to peculiar public favor on account of its advancement of public justice. The above limitation laid down by Judge Story is favored by the technical meaning of the words garnishment and garnishee. The former means merely a warning given to one for his appearance for the information of the court and explaining a cause. A garnishee is one in whose hands *money* is attached within the liberties of the city of London by process out of the Sheriff's Court; so called because he hath had garnishment or *warning* not to pay the money to the defendant but to appear and answer the plaintiff creditor's suit.—Tomlin's Law Dic. This clearly implies cases alone where the garnishee has no reason to question his direct liability to the defendant.

There are many reported cases which settle the right of the garnishee to set-off against the creditor any demand which would be a legal set-off in an action against the garnishee by the debtor. But none of the cases limit the right of the garnishee to off-sets which are merely legal. On the contrary, while the case of Piquet v. Swann *supra*, expressly determines the right of the garnishee to avail himself of legal off-sets, it extends his right of resisting a judgment to all cases where he himself sets up any adverse interest, title or claim. In the case of Lamb v. Stone, 11 Pick. 553, the court, refering to The Boston Type Company v. Mortimer, principal, and Chapin, trustee, 7 Pick. 166, expressly decide that when a creditor resorts to the trustee process, the defendant is entitled to *any equitable set-off* which he may have against his principal. To the same effect is Smith v. Stearns, 19 Pick. 20, and Hathaway

v. Russell, 16 Mass. 473.   In these cases the right of the res-
pondent to an equitable set-off against the principal is fully
established.

It is admitted that if Roan had sued Loftin for the surplus of
the trust funds remaining in his hands, the latter under the au-
thority of Bell v. Horton, *supra*, could not have used as an off-
set Roan's note to D. A. Stewart & Co. unless he had proved
a direct promise by Roan to himself to pay him the money.   If
he could have proved this, the supposed set-off would have
been good.   Yet even if Roan, being insolvent, had brought
such an action and obtained judgment, the note refered to would
have been a good equitable set-off under the authority of The
Tuscumbia Rail Road Company v. Rhodes, 8 Ala. 206.   The
County Court therefore, according to the cases hereinbefore
cited, erred in depriving the garnishee of the benefit of the equi-
table set-off refered to.

R. H. SMITH, for the defendant.

CHILTON, J.—The answer of the garnishee in this case
shows that he has funds in his hands belonging to the defendant
in the judgment, Jesse F. Roan, being a balance of the pro-
ceeds of property conveyed to him in trust to secure a debt due
him after satisfying the deed, but insists upon his right to appropri-
ate that balance to the payment of a note made by said Roan to
Stewart & Co. and which was due and owned by the garnishee at
the time of the service of the process of garnishment.   It appears,
however, this note was transfered to him without endorsement and
that consequently the legal title to the same remains in Stewart &
Co., the payees.   The sole question for our consideration is, can
the garnishee in a court of law avail himself of this note as an equi-
table set-off against the demand sought to be recovered from
him by the creditor of Roan?   The court below adjudged that
he could not and gave judgment against him for the balance, to
reverse which he brings the case to this court.   In our opinion
the remedy given by garnishment is purely legal.   It is, as was
decided in the case of Travis v. Tait, 8 Ala. Rep. 574, 5 ib.
442, the institution of a suit by the attaching creditor against
the debtor of his debtor.   It must be therefore governed by the
rules which govern other suits, so far as they are adapted to the

30

relative position of the parties. So in Walke v. McGehee, 11 Ala. 272, this court said, "We are inclined to think that a demand against a garnishee can be subjected to process of attachment only when a debt is actually existing"—such debts as would enable the creditor himself, were he suing, to maintain either debt or *indebitatis assumpsit*.—(Ib. 276.) It is certainly true that the plaintiff in the garnishment, being substituted to the legal rights of his debtor, to be enforced in this summary way, cannot maintain this proceeding to recover an equitable demand—one upon which the debtor could not have maintained his action at law. The same principle which would limit the plaintiff to a legal ground of action would equally apply to the defendant—he must be confined to such defences as he could have made had his debtor, instead of the creditor of his debtor, instituted legal proceedings against him. This would seem to result from the want of adaptation in the forms of the court of law to do complete equity between the parties. If the defendant could be allowed to set up an equitable defence while the plaintiff was confined down to his legal right of action, there would seem to be a want of mutuality in the proceeding, and the greatest injustice might sometimes be done. The plaintiff might have an equitable demand which would countervail that set up by the defendant, yet he would be unable to subject the legal demand, inasmuch as the defendant could and *he* could not set up his equitable one. Besides, in many cases it would be impossible for the court of law to adjust properly the equities between the parties, even if it possessed the jurisdiction. Such a practice of blending the legal and equitable jurisdiction of the courts, would under their present organization introduce the greatest confusion, uncertainty and difficulty. The view we take is, we think, clearly indicated by the whole tenor of our decisions, and must be sustained so long as the jurisdiction of courts of equity is kept distinct from that of the law courts. If Stewart & Co., the payees of the note, retained the legal title, it is well settled that had Roan instituted his action of assumpsit to recover the balance due after satisfying the mortgage deed from the present garnishee, the latter could not have set-off the amount of the note to Stewart & Co. in such suit, however strong may have been his equity. We think he stands in the same condition with respect to the plaintiff in the garnish-

ment.   If he has a set-off which is *equitable*, he must assert it in a court of equity, where for ought we can know, it may be rebutted or repelled and countervailed by superior equities.

The cases cited from Massachusetts are no doubt very correct expositions of the law applicable to trustee process as it there obtains, and where having at the time no courts of equity, the courts of law must mould their form of proceedings so as to meet the justice and equity of the case.   In this State, however, we have appropriate tribunals for administering equitable relief, with powers and forms suited to the proper attainment of the entire equities between the parties, and it is not only a legal requisition but required by considerations of sound public policy and convenience, that the one court should not encroach upon or attempt to usurp the jurisdiction which properly belongs to the other.

Our conclusion is that the judgment of the County Court must be affirmed.