## NESBITT *vs.* WARE & McCLANAHAN.

[ORIGINAL ATTACHMENT—CONTEST WITH GARNISHEE.]

1. *Covenant between vendor and purchaser construed.*—A contract under seal, whereby a vendor covenants to make a valid deed with warranty by a specified day, and the purchaser covenants to pay the purchase-money, on the execution and delivery of the deed, in four equal annual payments, "to be made in iron at five cents per pound, and castings at four cents per

pound, to be delivered at the place or places where made ;" with an additional stipulation, that this sum "may be discharged and paid off," by the purchaser taking up an outstanding note against the vendor, and giving his obligation for a specified sum, payable in three equal annual installments,— confers upon the purchaser. at his election, the privilege of discharging the purchase-money in either of the ways specified ; but, if he fails to manifest an election, within a reasonable time, to avail himself of the stipulated privilege, by a full compliance with its terms, the vendor can only hold him liable on the original covenant.

2. *When debt or indebitatus assumpsit lies.*—Neither debt nor *indebitatus* assumpsit can be maintained on a covenant to pay a specified sum, in four equal annual payments, "to be made in iron at five cents per pound, and castings at four cents per pound, to be delivered at the place or places where made.'

3. *What demands may be subjected by garnishment.*—An attaching creditor cannot,' by process of garnishment, reach any demand which, from its character, his debtor could not recover in debt or *indebitatus* assumpsit.

4. *Admissibility of parol evidence to affect writing.*—In an action on a written contract, parol evidence cannot be received, to add to, contradict, or vary its terms.

5. *Issue contesting garnishee's answer.*—When the answer of a garnishee is contested by the plaintiff, the issue is confined to a general allegation that he is indebted to the defendant, either generally, or in a larger amount than that admitted by his answer.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. ANDREW B. MOORE.

THE appellees sued out an original attachment against John Gray, and summoned the appellant, by process of garnishment, as the debtor of said Gray. The appellant filed a written answer, denying all indebtedness to Gray, and stating the particulars of a contract between them for the purchase by him of a tract of land from Gray. The plaintiffs in attachment contested this answer, and alleged, as the issue was made up under the direction of the court, that said garnishee was indebted to said Gray, in the sum of $3,000, on the 1st April, 1852, for work and labor, money paid, goods sold and delivered, and by account due 1st February, 1852 ; further, that said Nesbitt purchased from said Gray, on the 10th February, 1851, a tract of land at the price of $6,000, to be paid as hereinafter shown,—"went into possession of said land under said contract, and has elected to discharge said sum of $6,000 as therein stipulated, but has never paid said sum of $3,000 ;" and further, "that said Nesbitt, on the 10th Feb-

ruary, 1851, by his instrument in writing, in consideration of a tract of land sold to him by said Gray, bound himself to pay to said Gray the sum of $6,000 in four equal annual payments, the first to be made on the 10th February, 1852; which said payments should be made in iron at five cents per pound, and castings at four cents per pound,—that said Gray put said Nesbitt in possession of said land under said contract, and that said Nesbitt has failed to pay said installments now past due, and has thereby become liable to pay the same to said Gray in money." The garnishee demurred to the last specification, and objected to joining issue thereon; but his objection and demurrer were overruled.

The written contract between said Nesbitt and Gray, which was signed and sealed by them, is in these words:

"Articles of agreement, made and concluded on the 10th February, 1851, between John Gray and his wife Sarah, of the one part, and Wilson Nesbitt of the other, as follows: The said Gray and his wife, for the consideration hereinafter mentioned, for themselves, their executors, and administrators, do *consent*, (?) promise, grant and agree, to and with the said Wilson Nesbitt, his executors," &c., "that they shall and will, on or before the 1st of September, 1852, by good and lawful deed or deeds, sufficiently grant, convey and assure unto the said Nesbitt, his heirs," &c., "in fee-simple, clear of all incumbrances, (except one tract of 233 acres, to which we will only convey the life interest of the said Sarah,) the following tracts, or parcels of land, which we do warrant and defend unto the said Wilson Nesbitt," &c. "In consideration whereof, the said Wilson Nesbitt, for himself," &c., "doth covenant, promise and agree with the said parties of the first part, their heirs, &c., by these presents, that he, his heirs, &c., shall and will, on the execution and delivery of the deed or deeds for the premises aforesaid, well and truly pay, or cause to be paid, unto the said John Gray, his executor, &c., the sum of $6,000, in four equal annual payments from the date hereof, all without interest,—the payments to be made in iron at five cents per pound, and castings at four cents per pound, to be delivered at the place or

places where made. It is agreed, and is a part of this agreement, that the above sum of $6,000 may be discharged and paid off in the following way, to-wit: should the said Nesbitt, his executor, &c., lift a note of hand due to the State of Alabama, for the sum of $941, dated 19th August, 1848, and payable 19th August, 1852, with interest from date, signed by John Gray, Daniel Watrous and Rufus McLain; and give his obligation for $3,000, payable in three equal annual payments thereafter, from 10th February, 1851, all without interest,—then, and in that way, said sum. of $6,000 may be discharged and paid off. It is agreed, that said Gray shall give said Nesbitt possession of the premises on the execution of this agreement; and for the true and faithful performance of all and every of the covenants and agreements aforesaid, each of the said parties binds himself, his heirs, &c., in the penal sum of of $12,000. In witness whereof," &c.

"For the purpose of showing fraud on the part of Nesbitt in drawing up said contract, one McLain was permitted to state to the jury, at the instance of the plaintiffs, and against the objection of the garnishee, that he heard a conversation between Nesbitt and Gray, several days before they finally agreed on the trade for the land, and while they were negotiating about it; that Gray asked $6,000 for the land, payable in four equal annual installments in iron, but told Nesbitt that he might have the privilege of paying the first installment in iron, and pay the 16th section note and $3,000 besides in three annual payments, in discharge of the whole; and that they then parted, without coming to any agreement. To this the garnishee excepted. The witness further testified, against the objection of the garnishee, that Nesbitt and Gray, some eight or ten days afterwards, went to Montevallo, some eight miles from said tract of land, and then and there agreed upon the terms of their contract. The court overruled the objection of the garnishee, that the contract was in writing, and could not be thus explained or varied, and permitted the witness to testify, that the contract, as thus agreed upon, was, that Nesbitt was to pay $6,000 in iron, in four equal annual installments, as

set forth in the contract, or might, if he chose to do so, pay the 16th section note in the bank, and money enough besides to make $5,000 including said note; and to this the garnishee excepted. The witness further testified, against the objection of the garnishee, that Gray showed him the contract in writing several days afterwards; that it was not then signed, and Nesbitt was not present; that Gray requested him to examine the contract; that he did so, and told Gray that it did not truly contain the terms of the agreement, in that it bound Nesbitt to pay only $3,000. To this, also, the garnishee excepted."

It appeared from the evidence, as set out in the bill of exceptions, that Gray disappeared from the county on the 19th of May, 1852, leaving no agent, and having never executed a conveyance to Nesbitt, and nothing was afterwards heard of him; that Nesbitt had no iron or castings on hand about the 10th February, 1852; and that he paid the 16th section note in bank in August, 1852. There was other evidence in the case, but it is not deemed material to the points decided.

The court charged the jury, in substance, that if Nesbitt did not have iron on hand ready to make the first payment, and paid Gray money on the contract, that was an election on his part to pay in money instead of iron, and the $3,000 stipulated in the contract was then liable to the plaintiffs' attachment; that the payment by Nesbitt of the 16th section note, in August, 1852, was a circumstance to which the jury might look, in determining whether Nesbitt had elected to pay in money or in iron; that Nesbitt was bound, notwithstanding the disappearance of Gray, to have the iron ready to pay the installments as they fell due, or he forfeited his right to pay in iron, and became bound to pay in money; and that the execution and delivery of a deed for the land was not a condition precedent to the payment of the installments. The garnishee excepted to each part of this charge.

These rulings of the court are now assigned as error.

WM. M. BROOKS, for the appellant.

I. W. GARROTT, *contra*.

RICE, C. J.—The plaintiffs assert that the garnishee is indebted to their debtor, John Gray, by force of a written contract entered into between, and signed and *sealed* by, the garnishee and said Gray, on the 10th of February, 1851, a copy of which appears in the bill of exceptions; and they have resorted to the remedy by garnishment, (instituted before the Code went into effect,) to reach and recover that indebtedness. By that remedy, they are "merely substituted to the rights" of their debtor, and cannot reach the demand, if, *from its character*, their debtor could not have maintained *debt* or *indebitatus assumpsit* upon it.—Hall v. Magee, 27 Ala. 414; Lundie v. Bradford, 26 Ala. 512; Cook v. Walthall, 20 Ala. 334; Loftin v. Shackelford, 17 Ala. 455; Hazard v. Franklin, 2 Ala. 349; The Br. Bk. at Mobile v. Poe, 1 Ala. 396.

The legal effect of the contract is, that Nesbitt should pay Gray, in the installments, and at the times specified therein, six thousand dollars, "in iron at 5 cents per pound, and castings at 4 cents per pound, to be delivered at the place or places where made;" with a condition superadded, giving to Nesbitt *the privilege* of discharging it in a specified "way;" that is, by doing *the two things specified*, to-wit, paying the note for $941 to the State, and giving "his obligation for three thousand dollars," payable in money, in the installments, and at the times specified. That privilege was merely for the benefit of Nesbitt, and did not put him under any obligation to pay the note to the State, nor to give his obligation for the three thousand dollars to be paid in money. The only "way" in which he could manifest an election to avail himself of the privilege, was *by doing both the things* prescribed; that is, by paying the note to the State, *and* giving his obligation for the three thousand dollars payable in money. And unless *both* of these things were done by him within a reasonable time after the contract was made, he lost the privilege, and his obligation to pay the six thousand dollars in iron and castings, at the times and prices specified, is precisely the same as if the privilege had not been given by the contract to discharge it in the prescribed "way." Gray has no right, under the contract, to hold

the garnishee liable for the three thousand dollars, for
which the latter had the privilege to give his obligation,
unless that obligation has been given. And as it seems
to be a conceded fact, that no such obligation has been
given, the garnishee is not liable for the three thousand
dollars; but, if liable at all, his liability is for a part or the
whole of the six thousand dollars first mentioned in the
contract, to be paid *in iron and castings as therein shown.*—
Plowman v. Riddle, 7 Ala. 775; Love v. Executors of
Simmons, 10 Ala. 113.

Supposing him liable for a part or the whole of that
six thousand dollars, the question is, could Gray have
maintained *debt* or *indebitatus assumpsit* to enforce that
liability. We think it clear that he could not. An action
by him, to enforce such liability, must have been *an action
on the contract itself.*—Hall v. Magee, 27 Ala. 414; Merri-
weather v. Taylor, 15 Ala. 735. *Indebitatus assumpsit*
could not have been supported, because (if for no other
reason) the contract is under seal.—See Cochran v. Tatum,
3 Monroe, 405. *Debt* could not have been sustained,
because each installment was to be paid *in iron and castings*
at a specified price.—Scott v. Young, 5 Ala. 475; Jolley v.
Walker, 26 Ala. 690; Love v. Executors of Simmons,
10 Ala. 113; Carlisle v. Davis, 7 Ala. 42; Wilson v. Jones,
8 Ala. 536.

In an action on the written contract, or to enforce it,
parol evidence is not admissible, to add to, contradict, or
vary its terms.—Cole v. Spann, 13 Ala. 537; West v. Kelly,
19 Ala. 353; Dixon v. Barclay, 22 Ala. 370; Phillips v.
Longstreth, 14 Ala. 337.

When, as in this case, the answer of the garnishee is
controverted by the oath of *the plaintiff* in attachment,
"the issue is, of necessity, confined to a general allegation
that the garnishee is indebted to the defendant in attach-
ment, either generally, or in a larger sum than admitted
by his answer."—Myatt v. Lockhart, 9 Ala. 91. See,
also, 2 Ala. 349; 1 Ala. 396; 17 Ala. 455.

The issue, as made up under the direction of the court in
this case, was not the proper issue. In directing that issue
to be made up, the court erred in requiring the garnishee

to join issue on the allegations of the plaintiff in relation to the written contract between Gray and the garnishee. Those allegations, if true, do not show any *indebtedness* which can be reached by the garnishment.— See authorities above cited.

The court also erred, in admitting those portions of the evidence of the witness McLain, embraced by the first three exceptions taken thereto by the garnishee. That evidence tended to contradict, add to, or vary the written contract; and should, therefore, have been excluded on the objections made thereto by the garnishee.

It is unnecessary to consider or decide whether the court below did not err in its other rulings embraced by the assignments of error; because the views above expressed by us are decisive of the case against the plaintiff.

For the errors above noticed, the judgment of the court below is reversed, and the cause remanded.